**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| LINDA P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:20-cv-00514-TWP-MPB |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Linda P.[1] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. For the following reasons, the Court **affirms** the decision of the Commissioner.

## I.   PROCEDURAL BACKGROUND

On February 29, 2016, Linda P. protectively filed an application for DIB, alleging a disability onset date of October 14, 2015. (Filing No. 8-2 at 15.) Her application was initially denied on May 26, 2016, (Filing No. 8-2 at 102), and upon reconsideration on September 28, 2016, (Filing No. 8-2 at 107). Administrative Law Judge Tammy Whitaker (the "ALJ") conducted a hearing on November 14, 2018, at which Linda P., represented by counsel, and a vocational expert ("VE"), appeared and testified. (Filing No. 8-2 at 36-78.) The ALJ issued a decision on January 24, 2019, concluding that Linda P. was not entitled to receive benefits. (Filing No. 8-2 at 12-29.)

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

The Appeals Council denied review on December 17, 2019.  (Filing No. 8-2 at 1.)  On February 14, 2020, Linda P. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying her benefits.  (Filing No. 1.)

## II.    STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).  To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments,

20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps.  *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).  Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations."  *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184).  At step four, if the claimant can perform her past relevant work, she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  The claimant is not disabled if she can perform any other work in the relevant economy.  *Id*.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Stephens*, 888 F.3d at 327.  For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'"  *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment

for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also appropriate when the decision is not supported by substantial evidence.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id*. (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## III.   FACTUAL BACKGROUND

When Linda P. filed, she alleged that she could no longer work because of arthritis, a hip arthroplasty/replacement, knee chondrosis, patellofemoral syndrome, meniscus tears, a Baker's cyst, fibromyalgia, and asthma.  (Filing No. 8-3 at 45.)  She was 40 years old when her alleged disability began.  (*See* Filing No. 8-3 at 17.)  She completed high school and some college but did not have a college degree.  (Filing No. 8-2 at 40.)  She has worked as a business development manager and inside sales representative in the industrial sector.  (Filing No. 8-3 at 47.)  The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision

4

and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Linda P. was not disabled.  (Filing No. 8-2 at 29.)  At step one, the ALJ found that Linda P. had not engaged in substantial gainful activity[2] since October 14, 2015, the alleged onset date.  (Filing No. 8-2 at 17.)  At step two, the ALJ found that Linda P. had "the following severe impairments: obesity; degenerative disc disease and spondylosis of [her] cervical spine with radiculopathy; status post right hip arthroplasty; status post left knee total replacement; tricompartmental osteoarthritis of the right knee; and asthma."  (Filing No. 8-2 at 17 (citations omitted).)  At step three, the ALJ found that Linda P. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Filing No. 8-2 at 20.)  After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a), such that she can lift, carry, push, and pull 10 pounds occasionally and 5 pounds frequently; sit 6 hours out of an 8-hour day; and stand and walk, in combination, 2 hours out of an 8-hour day.  The claimant is limited to work where she stands or walks for at least 10 minutes of every hour while remaining on task.  She is not able to push or pull arm or hand controls.  The claimant can never climb ladders, ropes, stairs, or scaffolds, and never kneel, crouch, or crawl.  She can occasionally balance, stoop, and climb ramps.  With the non-dominant left upper extremity, the claimant is limited to frequent reaching, overhead reaching, handling, fingering, and feeling.  She can tolerate no exposure to extreme cold.  She can tolerate no concentrated exposure to respiratory irritants, such as fumes, odors, dusts, and gases.  The claimant can have no exposure to unprotected height, dangerous moving machinery, or slippery, uneven, or wet walking surfaces.  She is limited to simple, routine, tangible, and repetitive work.  In addition, the claimant is limited to work that allows for the occasional use of a cane to stand, walk, or balance.

---

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

(Filing No. 8-2 at 21.)  At step four, the ALJ found, considering the VE's testimony and Linda P.'s RFC, that she could not perform any of her past relevant work as a manufacturer representative or in a composite job as a department manager and telephone solicitor.  (Filing No. 8-2 at 26-27.)  At step five, considering Linda P.'s age, education, work experience, and RFC, as well as the VE's testimony, the ALJ concluded that Linda P. could have performed other work through the date of the decision with jobs existing in significant numbers in the national economy in representative occupations, such as a telephone solicitor, surveillance system monitor, and charge account clerk. (Filing No. 8-2 at 27-28.)

## IV.    DISCUSSION

Linda P. makes three assertions—arguing that the ALJ erroneously: (1) determined that Linda P. did not meet or equal Listings 1.02 and 1.03, (Filing No. 10 at 23-28); (2) evaluated her subjective statements concerning her symptoms, (Filing No. 10 at 29-34); and (3) determined that the need to elevate her legs was not a necessary limitation to her RFC, (Filing No. 10 at 35-37). The Court will address the arguments in turn.

### A.    Listings 1.02 and 1.03

To meet a listing, a claimant must establish with objective medical evidence the precise criteria that is specified.  *See* 20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of" benefits at Step Three).  In the alternative, a claimant can establish "medical equivalence" in the absence of one or more of the findings if he has other findings related to the impairment or has a combination of impairments that "are at least of equal medical significance."  *See* 20 C.F.R. § 404.1526(a)-(b).

Linda P. has had multiple surgeries on her knees and hip.  She had arthroscopic surgery on her left knee in 2007.  (Filing No. 8-3 at 25.)  She had a tissue transplant procedure in 2009 for a meniscus tear in her right knee.  (Filing No. 8-3 at 25.)  She had subsequent surgeries on the left knee in 2010 and the right knee in 2012. (Filing No. 8-5 at 50.)  On October 14, 2015, she had a right total hip replacement/arthroplasty.  (Filing No. 8-4 at 37-38.)  On March 13, 2018, x-ray imaging of both knees showed tricompartmental osteoarthritis with evidence of enthesopathy on the left and a prior tibial tubercleplasty procedure on the right.  (Filing No. 8-7 at 4.)  On August 8, 2018, she had a left total knee replacement.  (Filing No. 8-6 at 55-59.)

Both Listings 1.02(A) for major dysfunction of one major weight-bearing joint and 1.03 for surgical arthrodesis of a major weight-bearing joint require, in part, that the impairment results "in inability to ambulate effectively, as defined in 1.00B2b."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.02(A); 1.03.  The regulatory section explains:

b. What We Mean by Inability To Ambulate Effectively

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. [ . . . ]
(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b).

The ALJ considered Listings 1.02 and 1.03. (Filing No. 8-2 at 20.) She explained that the listings were not met or equaled because:

> Specifically, the medical records do not show she has the inability to walk without the use of a walker, two crutches, or two canes. Indeed, when not recovering from surgery, the record shows the claimant ambulates with a cane or otherwise ambulates without an assistive device (Exhibits 3F/3, 5; 7F/3; 9F/2; 11F/1, 6; 17F/5-6). The evidence also does not show the claimant has the inability to carry out routine ambulatory activities, such as shopping and banking or the inability to climb a few steps at a reasonable pace with the use of a single handrail. For example, the claimant testified [that] she is able to shop with her mother and perform some household chores, albeit with breaks (Exhibit 5E; Hearing Testimony).

(Filing No. 8-2 at 20.)

Linda P. contends that the ALJ provided only a perfunctory listing analysis, *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015), she did not confront conflicting evidence to allow meaningful review of how such evidence was rejected, *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citations omitted), and she focused exclusively on the type of ambulatory aid used, rather than considering the other inexhaustive, regulatory examples of the inability to ambulate effectively, *see Moss v. Astrue*, 555 F.3d 556, 562-63 (7th Cir. 2009).

The ALJ's analysis, though brief, focused on the material requirement—that Linda P. challenges on appeal—of the listings. Unlike in *Minnick*, the ALJ did not just conclusively assert that the listing was not met. She explained her finding by applying the record.

The ALJ alluded to the fact that Linda P. sometimes required ambulatory aids involving both hands—beyond her more typical use of a single cane. She had two total replacement surgeries of major weight-bearing joints during the period under review. On February 12, 2016, four months after her right hip replacement, she was ambulating without an assistive device with only a "mild limp." (Filing No. 8-4 at 7.) She was advised by her orthopedist to "slowly resume" her "normal

level of activity" when she felt better.  (Filing No. 8-4 at 7.)  On May 13, 2016, she reported to a consultative examiner that she was using a cane but needed a walker "sometimes."  (Filing No. 8-5 at 50.)  Her gait was antalgic "but she was able to ambulate about the room at a normal pace without holding onto the wall."  (Filing No. 8-5 at 52.)  The examiner assessed that the cane that Linda P. had with her during the examination "appear[ed] to be medically necessary if she [was] going to be walking for long periods."  (Filing No. 8-5 at 53.)  At a second consultative examination on September 26, 2016, she walked "slow" with a cane and was able to walk without it, but she took "smaller steps."  (Filing No. 8-5 at 60.)  The examiner observed that "[h]er left knee appears to [give] out sometimes when she walks without [a knee] brace."  (Filing No. 8-5 at 61.)  She was unable to heel, toe, tandem walk or stand on either leg alone.  (Filing No. 8-5 at 61-62.)  On September 28, 2017, after Linda P. felt a pop in her left knee, she was unable to bear weight on her left leg and required the use of crutches.  (Filing No. 8-6 at 10.)  The examination "demonstrated antalgia on the left."  (Filing No. 8-6 at 11.)  On September 4, 2018, four weeks after Linda P.'s left knee replacement, she was using a walker.  (Filing No. 8-6 at 51.)  Her orthopedist advised her to continue "moving herself on the walker as tolerated."  (Filing No. 8-6 at 51.)

During the November 14, 2018 hearing, Linda P. testified that she used a cane "outside the home . . . most all the time."  (Filing No. 8-2 at 41.)  She added that she "[s]ometimes [uses] a walker."  (Filing No. 8-2 at 41.)

Despite some conflict in the record around the time of surgical recoveries and injury, the ALJ's relevant conclusion is supported by substantial evidence that Linda P. was predominantly able to ambulate with the use of a single cane.  Moreover, the Court can trace how the ALJ resolved the conflict.

The ALJ also considered another regulatory example—whether Linda P. was unable to carry out routine ambulatory activities.  Linda P. reported the ability—albeit with pain and difficulty—to do the activities explicitly mentioned in the regulation: shopping and banking.  On April 20, 2016, when she spoke with the SSA about her application, she reported her daily activities were limited by physical issues, but she could shop.  (Filing No. 8-3 at 54.)  At the hearing, Linda P. testified that she and her mother—with whom she lives—were able to do the grocery shopping together.  (Filing No. 8-2 at 49.)  She described her mother as elderly and limited with self-care by severe arthritis.  (Filing No. 8-2 at 52.)  Linda P. testified that she limited her grocery trips to 30-60 minutes in duration and used the cart to bear most of her weight.  (Filing No. 8-2 at 49.)  She estimated that she could stand with her cane at the deli counter for five to ten minutes, but it was "excruciating if there's more than a couple people" in front of her in line.  (Filing No. 8-2 at 49.)  She testified that she could do some chores around the house, like vacuuming, except for that was "impossible when it's around the surgery time because I'm completely on a walker then."  (Filing No. 8-2 at 53.)  Linda P. stated that she helped her mother "with some of her banking" and paying bills.  (Filing No. 8-2 at 53.)

As Linda P. points out, the record showed that she had a particular problem climbing stairs, which is another regulatory example.  She testified that going up stairs caused her pain to increase.  (Filing No. 8-2 at 46-47.)  On January 14, 2016, towards the end of her physical therapy for her hip replacement, she was advised "no lunges / stairs because of her knees."  (Filing No. 8-3 at 112.)  On September 26, 2016, she reported to a consultative examiner that she tried to completely avoid climbing any stairs.  (Filing No. 8-5 at 54.)  At an orthopedic evaluation when Linda P.'s left knee replacement was recommended, she reported that she could not walk up any stairs or further than one block.  (Filing No. 8-6 at 48-49.)

The ALJ's listing explanation could have been more thorough.  However, the ALJ demonstrated that she not only considered the appropriate listings but analyzed the crucial inquiry. The Court cannot reweigh the evidence.

The ALJ also explained that "no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment." (Filing No. 8-2 at 20.)  A state agency consultant considered Listing 1.02 but assessed an RFC rather that concluding that any listing was met or equaled.  (Filing No. 8-2 at 95-99); *see Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988) (presumption based on a consultant completing disability transmittal forms and assessing an RFC that no listing was met or equaled based on the available record).  Linda P. has not developed any argument that her combined impairments were equivalent in severity to an inability to ambulate effectively.  She also did not produce a medical opinion that could be used to carry her Step Three burden.  *See Scheck*, 357 F.3d at 700-01 (lack of a conflicting opinion is a factor in determining if consultants' opinions support the ALJ's Step Three determination).  She conclusively asserts that "[t]he ALJ has committed reversible error by failing to seek expert advice on whether [Linda P.'s] knee impairment or hip impairment meets or equals Listings 1.02 or 1.03[,] despite an abundance of evidence to support such a finding."  (Filing No. 10 at 28.)  However, she has not developed that argument with any legal authority.  The Seventh Circuit has held in a social security disability context that "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."  *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)).

Accordingly, the ALJ's Step Three determination is supported by substantial evidence.

B.    **Subjective Symptom Evaluation**

Linda P. contends that the ALJ did not properly apply SSR 16-3p.  (Filing No. 10 at 29.)
She also contends that an ALJ cannot discredit a claimant's subjective symptoms solely because
they are not supported by objective evidence.  (Filing No. 10 at 30.)  Linda P. asserts that the ALJ's
use of her activities of daily living did not demonstrate that she was less limited than she alleged.
(Filing No. 10 at 31.)  She asserts further that "[n]o attempt to satisfy the remaining requirements
of SSR 16-3p was otherwise made."  (Filing No. 10 at 33.)

When evaluating a claimant's subjective statements about the intensity and persistence of
her symptoms, the ALJ must often, as here, make a credibility determination concerning the
limiting effects of those symptoms.  *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).  Reviewing
courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester v.
Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir.
2015)).   Reviewing courts examine whether a credibility determination was reasoned and
supported; only when an ALJ's decision "lacks any explanation or support . . . will [a court] declare
it to be 'patently wrong.'"  *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).  "Credibility
determinations will not be overturned unless they are clearly incorrect. As long as the ALJ's
decision is supported by substantial and convincing evidence, it deserves this court's deference."
*Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citations omitted); *see Alvarado v. Colvin*,
836 F.3d 744, 749 (7th Cir. 2016) (A credibility determination "tied to evidence in the record" may
not be disturbed as patently wrong.).  If a fully favorable determination cannot be made based
solely on the objective medical evidence, SSR 16-3p directs the ALJ to consider "all of the
evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms,"
including the regulatory factors relevant to a claimant's symptoms, such as daily activities, the

12

location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *6-8; 20 C.F.R. § 404.1529(c)(3). The ALJ need discuss only the factors "pertinent to the evidence of record." SSR 16-3p, 2017 WL 5180304, at *8.

The ALJ partially credited Linda P.'s subjective allegations. "The regulations require that an ALJ's RFC be based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009) (citations omitted); *see* 20 C.F.R. § 404.1529; 20 C.F.R. § 404.1545. "Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa*, 569 F.3d at 1171; *see Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011) ("RFC determinations are inherently intertwined with matters of credibility, and we generally defer to an ALJ's credibility finding unless it is 'patently wrong.'") (quoting *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). The ALJ added additional limitations to the reviewing consultants' assessments based on the updated record, Linda P.'s combined impairments, and her "subjective complaints" including pain. (Filing No. 8-2 at 25.) The ALJ added manipulative limitations, the need to stand or walk for at least ten minutes every hour, a limitation to unskilled work, and the occasional need to use a cane for even balance. (Filing No. 8-2 at 25.)

Linda P. does not develop her SSR 16-3p argument by identifying the impairments, symptoms, or statements that she contends were erroneously discredited by the ALJ. The ALJ did

not credit all Linda P.'s assertions.  For instance, her hearing representative asserted that she "at least equaled" Listing 1.02.  (Filing No. 8-2 at 38.)  As discussed above, the ALJ relied on the record evidence including Linda P.'s reported activities of daily living and capabilities to discredit that assertion.  The Seventh Circuit has "criticized ALJs for equating activities of daily living with an ability to work." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citations omitted). However, an ALJ is not only permitted but instructed to consider daily activities.  *Id*. (citing 20 C.F.R. § 404.1529(c)(3)(i)).  The ALJ may properly use activities of daily living to demonstrate that the claimant's testimony—or here, Linda P.'s counsel's presentation of her case at the hearing—was undermined about the extent of her exertional limitations.  *Loveless*, 810 F.3d at 508; *Pepper v. Colvin,* 712 F.3d 351, 369 (7th Cir. 2013).

The ALJ also considered other factors including Linda P.'s response to and need for treatment.  The ALJ may consider inconsistencies between the severity of symptoms that the claimant described to the SSA compared with when she was seeking treatment, the failure to regularly seek treatment for those symptoms, the level of treatment, and the effectiveness of treatment. *See e.g.*, *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005); *see also Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (noting the deference given to the administrative factfinder on judicial review, as well as the regulatory guidance instructing the ALJ to consider such evidence).  The ALJ explained that following a four-month postoperative follow-up appointment concerning Linda P.'s hip replacement—when she was instructed to slowly resume normal activity—she did not need any further treatment for the impairment.  (Filing No. 8-2 at 23-24.)  The ALJ further explained that "treatment notes document[ed] some improvement after right hip replacement and left knee replacement (Exhibits 3F/3; 13F/4)."  (Filing No. 8-2 at 25.)  She explained that following Linda P.'s left knee replacement, she "treated with her primary care

14

provider, David Bain, M.D., for complains of asthma.  She specifically denied arthralgia, joint swelling, and myalgia.  In addition, [the] physical examination was largely unremarkable (Exhibit l 7F/5-6)."  ([Filing No. 8-2 at 24](#).)  On October 24, 2018, the most recent treatment visit in the record, Linda P.'s subjective complaints were "[n]egative for arthralgias, joint swelling and myalgias."  ([Filing No. 8-7 at 32](#).)  The examination showed her to be in no distress, with normal range of motion, and normal strength.  ([Filing No. 8-7 at 32-33](#).)

Accordingly, the Court does not find any basis presented by Linda P. to conclude that the ALJ's subjective symptom evaluation was patently wrong.

**C.    Need to Elevate Legs**

Linda P. contends that the ALJ's RFC finding failed to account for her need to elevate her legs to treat her pain and swelling.  ([Filing No. 10 at 35](#).)

Linda P. testified that her most comfortable position was in a recliner with her legs elevated.  ([Filing No. 8-2 at 47](#).)  She explained that she also used ice packs on and off for 30-minute intervals each during the day to address swelling.  ([Filing No. 8-2 at 48](#).)  When asked what she would need to do to feel better after an hour of sitting, Linda P. testified, "Oh, I would usually need to elevate the legs, and ice them.  My fee[t] will get real[ly] cold, they'll be swollen, my socks will cut into me from the edema, so I usually need to elevate, or ice the legs for the back and hips.  Walking is better, but, naturally, that makes it worse on the knees."  ([Filing No. 8-2 at 48](#).)

Dr. Bain assessed that with prolonged sitting, Linda P. would need to elevate her legs above her heart for 75% of workday in a sedentary exertional job.  ([Filing No. 8-7 at 24](#).)  Dr. Bain explained that sitting for longer than one hour caused Linda P.'s legs to begin to swell.  ([Filing No. 8-7 at 27](#).)  On September 4, 2018, when Linda P. was four weeks removed from surgery on her left knee, her orthopedist also advised her to "continue icing [and] elevating . . . ."  ([Filing No. 8-](#))

6 at 51.)  The VE testified that Dr. Bain's relevant, assessed limitation would preclude competitive work.  (*See* Filing No. 8-2 at 73.)

 The ALJ explained how she found the record to support her RFC assessment.  "However, there is no objective evidence to support the claimant's alleged need to elevate her legs.  The record does not persuasively establish that it is medically necessary for the claimant to elevate her legs." (Filing No. 8-2 at 24.)

There is no record evidence that Linda P. had edema in her feet/ankles during an examination.  Linda P.'s testimony specifically described that type of swelling as the basis for her need to elevate her legs.

There is some evidence that Linda P. had joint swelling.  An MRI of her left knee taken August 4, 2015, did show meniscocapsular edema, progression of patellofemoral chondrosis or cartilage loss, and subarticular edema.  (Filing No. 8-4 at 53-54.)  On October 29, 2015, while she was completing physical therapy for her hip replacement, she was noted to be limited with standing "secondary to [lower extremity] swelling from [her] hips and knees."  (Filing No. 8-3 at 108.) During Linda P.'s recovery from knee surgery, her orthopedist recommended continued ice and elevation based on an examination that showed "minimal swelling about the knee."  (Filing No. 8-6 at 51.)  The MRI predated her left knee replacement.  The other mentions of swelling were limited to periods of surgical recovery.  There is no indication that Linda P.'s orthopedist assessed any long-term need for her to use ice and elevation to manage knee swelling.  As detailed above, Linda P. also specifically denied joint swelling during her last treatment visit with Dr. Bain.

To the extent Linda P. relies on Dr. Bain's opinion, the Commissioner contends that "because the ALJ properly rejected Dr. Bain['s] opinion" and Linda P. did not challenge that

16

finding in her opening brief, "this Court should reject [Linda P.'s] challenge to the RFC premised upon evidence that she concedes was properly rejected." (Filing No. 15 at 26.)

Based on the filing date of Linda P.'s application, the treating physician rule applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies to claims filed before March 27, 2017). In *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)), the Seventh Circuit held that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Scott*, 647 F.3d at 739 (citing *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306). "And even if there had been sound reasons for refusing to give [a treating physician's] assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit." *Scott*, 647 F.3d at 740 (citing *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott*, 647 F.3d at 740 (citing *Moss*, 555 F.3d at 561); *see* 20 C.F.R. § 404.1527(c). However, so long as the ALJ "minimally articulates" her reasoning for discounting a treating source opinion, the Court must uphold the determination. *Elder,* 529 F.3d at 415-16.

Irrespective of waiver considerations, the ALJ gave good reasons for giving "little weight" to Dr. Bain's opinion. (Filing No. 8-2 at 26.) The ALJ applied the factors—explaining that Dr. Bain only saw Linda P. once a year and his examination was unremarkable the day before he filled

out the medical source statement form.  (Filing No. 8-2 at 26.)  The ALJ also explained that "Dr. Bain's extreme limitations are inconsistent with his own treatment records."  (Filing No. 8-2 at 26.) His examinations failed to reveal any evidence of lower extremity edema.  Dr. Bain also assessed that Linda P. could use her bilateral upper extremities for handling, fingering, and reaching for various percentages up to 30% of an eight-hour workday.  (Filing No. 8-7 at 25.)  There is no evidence that Linda P. had any issue using her right upper extremity.

Accordingly, the ALJ's relevant finding—concerning Linda P.'s alleged need to elevate her legs—is supported by substantial evidence.

## V.  CONCLUSION

"The standard for disability claims under the Social Security Act is stringent."  *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010).  For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision.  The final decision of the Commissioner is **AFFIRMED**.  Linda P.'s appeal is **DISMISSED**.

SO ORDERED.

Date: 6/7/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov